IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

JAMIE HEUTON, individually and as
administrator of the estate of Andrew
Heuton and as next friend of A.H.,
ASHLEY HEUTON, and ANDREW
HEUTON, JR.,

                    Plaintiffs,

v.

UNITED STATES OF AMERICA,

                    Defendant.

Case No. 24-2065-DDC

## MEMORANDUM AND ORDER

In March 2022, Andrew Heuton passed away just days after receiving medical care at the Irwin Army Community Hospital in Fort Riley, Kansas.  Plaintiffs bring survival and wrongful death actions against defendant United States of America under the Federal Tort Claims Act (FTCA).  Plaintiffs allege that employees and agents of the army hospital provided medical care to Mr. Heuton negligently.  Defendant has filed a Motion for Partial Dismissal and/or Summary Judgment (Doc. 48).  It argues, first, that sovereign immunity applies to the wrongful death claims brought by plaintiffs Jamie Heuton, A.H., and Andrew Heuton, Jr. because those plaintiffs didn't exhaust their administrative remedies under the FTCA.  So, defendant moves under Fed. R. Civ. P. 12(b)(1) to dismiss all wrongful death claims—except plaintiff Ashley Heuton's—for lack of subject matter jurisdiction.  Second, defendant seeks partial summary judgment to limit plaintiffs' recoverable noneconomic damages under two separate statutory damage caps.

The court grants defendant's partial dismissal motion.  It concludes that only plaintiffs Ashley Heuton and the estate have exhausted their administrative remedies sufficiently to waive defendant's sovereign immunity under the FTCA.  Without such a waiver, sovereign immunity applies, and the court thus lacks subject matter jurisdiction over the other plaintiffs' wrongful death claims.  So, only one wrongful death claim survives this round of briefing—Ashley Heuton's—along with the estate's survival claim.

The court grants in part and denies in part defendant's partial summary judgment motion. It concludes that one Kansas statutory damage cap—that for wrongful death claims—applies to limit plaintiffs' recovery.  The other statutory damage cap defendant invokes—the one for the estate's survival claim—doesn't apply because the Kansas Supreme Court has held that cap facially invalid.

The court explains its reasoning, below, starting with the background facts.

I.      **Background**

The following facts are uncontroverted by the parties' papers unless otherwise indicated. They come from the Amended Complaint (Doc. 15) and from exhibits the parties filed with their briefs.  The court explains, below, why it relies on these documents in deciding defendant's partial dismissal motion.  *See* § II.A. (identifying what materials courts may consider on Rule 12(b)(1) factual challenge).  For purposes of defendant's partial summary judgment motion, the court "views the facts and draws reasonable inferences in the light most favorable to the party opposing the summary judgment motion." *Scott v. Harris*, 550 U.S. 372, 378 (2007) (quotation cleaned up).

### The Parties and Claims

Andrew Heuton, Sr. passed away on March 10, 2022.  Doc. 15 at 6 (Am. Compl. ¶ 34). Three days earlier, a doctor in the emergency department at Irwin Army Community Hospital

had examined and discharged him. *Id.* at 5–6 (Am. Compl. ¶¶ 28–31). Based on these events, plaintiffs filed this action asserting a survival claim against the United States on behalf of the estate of Andrew Heuton, Sr.[1] Doc. 1 at 7– 8 (Compl. ¶¶ 37–41). On April 30, 2024, plaintiffs amended their Complaint to assert wrongful death claims against the United States on behalf of Jamie Heuton, Ashley Heuton, Andrew Heuton, Jr., and A.H. Doc. 15 at 10–11 (Am. Compl. ¶¶ 51–56). Ashley Heuton, Andrew Heuton, Jr., and A.H. are undisputedly the surviving children of Andrew Heuton, Sr. *Id.* at 1–2 (Am. Compl. ¶¶ 2–4); Doc. 48-4 at 3 (Def. Ex. C). Jamie Heuton's status, however, is contested. The parties agree that Jamie Heuton and Andrew Heuton, Sr. were married from 2000 to 2017, when they divorced. Doc. 48-3 at 5–6 (J. Heuton Dep. 16:5–17:8); Doc. 48-4 at 3–4 (Def. Ex. C) (state court decree reciting year of marriage and decreeing divorce). But the parties dispute whether the two were in a common law marriage when Andrew Heuton, Sr. died. Doc. 54 at 3–6; Doc. 59 at 2–3. Plaintiffs seek to recover an estimated $20 million in non-pecuniary damages. Doc. 48-2 at 1–2 (Def. Ex. A).

### *Administrative Exhaustion*

---

[1]    The original Complaint also asserted survival and wrongful death claims against Eric B. Purdom, D.O., Michelle R. Fincham, M.D., and Inspire ENT and Pulmonology, P.A.—physicians and a healthcare association allegedly responsible for treating patients, including decedent here. Doc. 1 at 3, 9–11 (Compl. ¶¶ 9–11, 42–52). And it named another physician defendant, Travis D. Jordan, D.O., too. *Id.* at 2–3 (Compl. ¶ 8). Dr. Jordan dropped off in the Amended Complaint. Doc. 15 at 1 (Am. Compl.) (listing other defendants in caption, but not Dr. Jordan). The survival and wrongful death claims against the two other physicians and the association persisted. Doc. 15 at 2–3, 8–10 (Am. Compl. ¶¶ 9–11, 40–50). Later, plaintiffs dismissed all claims against these three defendants by stipulation—invoking Fed. R. Civ. P. 41(a)(1)(A)(ii) and signed by all relevant parties. *See* Doc. 80. So, the United States is the only remaining defendant.

Tying up other loose ends: Before filing the dismissal stipulation, plaintiffs had filed a motion seeking to dismiss the same three defendants without prejudice. Doc. 44. Given the later stipulation, the court now denies as moot plaintiffs' Motion to Dismiss Certain Defendants (Doc. 44).

Before filing this action, the United States Army Claims Service (USACS) received two administrative claim forms relying on the events surrounding Andrew Heuton, Sr.'s death.[2] *First*, USACS received a Standard Form 95 (SF-95) administrative claim on behalf of Andrew Heuton Sr.'s estate.  Doc. 48-11 (Def. Ex. J).  The estate's SF-95 identified Jaime Heuton as the administrator of the estate and as a witness.  *Id.*  It asserted a personal injury claim with a sum certain demand of $12.5 million.  *Id.*  *Second*, USACS received an SF-95 administrative claim on behalf of Ashley Heuton.  Doc. 48-14 (Def. Ex. M).  That SF-95 identified Ashley Heuton as an heir and listed Jamie Heuton as a witness.  *Id.*  And it asserted a personal injury claim with a sum certain demand of $12.5 million.  *Id.*

Later, on October 5, 2023, USACS emailed plaintiffs' counsel about Ashley Heuton's SF-95.  Doc. 48-15 at 2 (Def. Ex. N).  It wanted to confirm that the form asserted a wrongful death claim—not a personal injury claim—despite the sum certain's placement in the form's "personal injury" box.  *Id.*  Importantly, the email also summarized the SF-95s USACS had received in this matter:  "[W]e have an SF-95 personal injury (surviving claim) from the estate by the administrator (Jamie) and an SF-95 for wrongful death claim by Ashley."  *Id.*  Plaintiffs' counsel confirmed in response that Ashley Heuton's SF-95 asserted a wrongful death claim.  *Id.* at 1.

The record reveals October 5, 2023, wasn't the first time plaintiffs' counsel had communicated with USACS.  In an earlier email exchange, plaintiffs' counsel asked about filing separate SF-95s for every heir.  Doc. 54-6 (Pl. Ex. P).  In response, USACS clarified:  "I

---

[2]    The court recognizes that Amy Moorlag, Andrew Heuton Sr.'s sister, also submitted an administrative claim form, not accounted for in these two administrative claims.  Doc. 48-12 (Def. Ex. K).  But—because Ms. Moorlag isn't an heir under Kansas law—plaintiffs' counsel later provided USACS official notice she was withdrawing her claim.  Doc. 48-13 (Def. Ex. L).  Ms. Moorlag's SF-95 thus isn't at issue here and the court focuses on just the two remaining administrative claims.

understand [Ashley] has siblings who have not filed.  If there are additional heirs for which you intend to file claims, you should be aware that we need to receive them prior to the SOL [statute of limitations]."  Doc. 54-7 (Pl. Ex. Q).  Relatedly, both SF-95 forms state in bold lettering that "[i]f the incident involves more than one claimant, each claimant should submit a separate claim form."  Doc. 48-11 at 2 (Def. Ex. J); Doc. 48-14 at 2 (Def. Ex. M).

The court applies the FTCA administrative exhaustion requirements to these facts, below. But first, the court recites the standard governing a Rule 12(b)(1) dismissal motion.

## II.    Partial Motion to Dismiss

### A.    12(b)(1) Motion to Dismiss Legal Standard

Under Rule 12(b)(1), a defendant may move the court to dismiss for lack of subject matter jurisdiction.  Fed. R. Civ. P. 12(b)(1).  "Federal courts are courts of limited jurisdiction and, as such, must have a statutory basis to exercise jurisdiction."  *Montoya v. Chao*, 296 F.3d 952, 955 (10th Cir. 2002).  "A court lacking jurisdiction cannot render judgment but must dismiss the cause at any stage of the proceedings in which it becomes apparent that jurisdiction is lacking."  *Basso v. Utah Power & Light Co.*, 495 F.2d 906, 909 (10th Cir. 1974).  The party invoking federal jurisdiction bears the burden to prove it exists.  *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994); *see also Siloam Springs Hotel, L.L.C. v. Century Sur. Co.*, 906 F.3d 926, 931 (10th Cir. 2018) (presuming "no jurisdiction exists absent an adequate showing by the party invoking federal jurisdiction" (quotation cleaned up)).

There are two types of Rule 12(b)(1) challenges:  (1) facial attacks on allegations in the complaint to challenge their sufficiency and (2) factual attacks on the facts on which subject matter jurisdiction depends.  *Holt v. United States*, 46 F.3d 1000, 1002–03 (10th Cir. 1995), *abrogated on other grounds by Cent. Green Co. v. United States*, 531 U.S. 425 (2001); *Blood v. Labette Cnty. Med. Ctr.*, No. 22-cv-04036-HLT-KGG, 2022 WL 11745549, at *2 (D. Kan. Oct.

20, 2022) (explaining the two forms for motion to dismiss for lack of jurisdiction under Rule

12(b)(1)).  "A facial attack assumes the allegations in the complaint are true and argues they fail

to establish jurisdiction." *Baker v. USD 229 Blue Valley*, 979 F.3d 866, 872 (10th Cir. 2020).

"A factual attack goes beyond the allegations in the complaint and adduces evidence to contest

jurisdiction." *Id.*  The court may resolve factual attacks considering matters outside the

complaint—including affidavits and other documents. *Id.*  So, in the factual attack setting, the

allegations in the complaint aren't presumptively true. *Guardado v. City & County of Denver*,

No. 24-1415, 2025 WL 1703531, at *2 (10th Cir. June 18, 2025).  Instead, in that setting,

"plaintiff bears the burden of proving the facts supporting subject matter jurisdiction by a

preponderance of the evidence."  5B *Wright & Miller's Federal Practice & Procedure* § 1350

(4th ed. May 2025 Update).

　　　When resolving "the jurisdictional question is intertwined with the merits of the case[,]"

the court must convert a Rule 12(b)(1) motion to dismiss into a 12(b)(6) motion or a motion

seeking summary judgment under Rule 56.  *Olsen v. U.S. ex rel. Dep't of Army*, 144 F. App'x

727, 731 (10th Cir. 2005) (citation and internal quotation marks omitted).  A jurisdictional

question is intertwined with the merits when "resolution of the jurisdictional question requires

resolution of an aspect of the substantive claim." *Paper, Allied-Indus., Chem. & Energy

Workers Int'l Union v. Cont'l Carbon Co.*, 428 F.3d 1285, 1292 (10th Cir. 2005) (internal

quotation and citation omitted).

### B.    Analysis

Defendant here attacks the facts on which subject matter jurisdiction depends.  In a

nutshell, it argues that plaintiffs Jamie Heuton, A.H., and Andrew Heuton, Jr. failed to exhaust

their wrongful death claims separately, as required for the United States to waive sovereign

immunity under the FTCA.  Doc. 48 at 10–11.  To establish this jurisdictional shortcoming,

defendant submits extrinsic evidence, including administrative filings and emails between plaintiffs' counsel and the relevant government agency—USACS.

The requisite jurisdictional analysis for this attack doesn't implicate the merits of plaintiffs' case—*i.e.*, whether Mr. Heuton received negligent medical care. Nor does it require resolving any substantive aspect of their wrongful death claims. Instead, it evaluates the steps plaintiffs took toward administrative exhaustion and whether those steps suffice under the FTCA. So, the court resolves this jurisdictional question using 12(b)(1)'s motion to dismiss standard.[3] *See De Baca v. United States*, 399 F. Supp. 3d 1052, 1183 (D.N.M. 2019) (considering "outside evidence on the failure-to-exhaust arguments without using the rule 56 standard" on motion to dismiss FTCA claim).

"Absent a waiver, sovereign immunity shields the Federal Government and its agencies from suit." *FDIC v. Meyer*, 510 U.S. 471, 475 (1994). And "[s]overeign immunity precludes federal court jurisdiction." *Garling v. EPA*, 849 F.3d 1289, 1294 (10th Cir. 2017) (citing *Meyer*, 510 U.S. at 475). "'The FTCA waives the federal government's sovereign immunity to suits for money damages arising out of the negligence of government agents.'" *Bowling v. United States*, 740 F. Supp. 2d 1240, 1245 (D. Kan. 2010) (quoting *Barnes v. United States*, 137 F. App'x 184, 187 (10th Cir. 2005)). But before a claimant properly can commence a lawsuit against the United States, the FTCA requires the claimant to exhaust administrative remedies. 28 U.S.C. § 2675(a); *see also Three-M Enters., Inc. v. United States*, 548 F.2d 293, 294 (10th Cir. 1977)

---

[3]    Plaintiffs' Response to this motion addresses the administrative exhaustion arguments under a summary judgment standard. *See* Doc. 54 at 11–24. But defendant's briefing explicitly asserts its motion as one seeking dismissal, not summary judgment. *See* Doc. 48 at 11 ("[B]ecause Jamie, Andrew Jr., and A.H. failed to individually exhaust their claims for wrongful death, the Court lacks subject matter jurisdiction over those claims. Thus, the Court should dismiss those claims for lack of subject matter jurisdiction."). And the court perceives no reason to convert the motion to one made under Rule 56 because the determination doesn't involve the claims' merits. Nor do plaintiffs provide the court with any such reasoning. *See generally* Doc. 54.

("[A]s a prerequisite to suit under the [FTCA], 28 U.S.C. [§] 2675(a) requires that the claim first be presented to the appropriate federal agency and be finally denied by the agency."). To satisfy this provision's exhaustion requirement, a claimant must file an administrative claim with the appropriate federal agency. 28 U.S.C. § 2675(a). This claim must include: "(1) a written statement sufficiently describing the injury to enable the agency to begin its own investigation, and (2) a sum certain damages claim." *Est. of Trentadue ex rel. Aguilar v. United States*, 397 F.3d 840, 852 (10th Cir. 2005) (citation and internal quotation marks omitted).

The FTCA's exhaustion requirement "is meant to inform the agency of the circumstances of the incident so it can investigate and respond either by settlement or defense." *Selvidge v. United States*, No. 93-4083-DES, 1994 WL 725399, at *3 (D. Kan. Dec. 30, 1994) (citing *Adams v. United States*, 615 F.2d 284, 289 (5th Cir. 1980)). "'It also serves to ease court congestion and avoid unnecessary litigation.'" *Bowling*, 740 F. Supp. 2d at 1245 (quoting *Strohm v. United States*, No. 06-4139-SAC, 2007 WL 3120704, at *3 (D. Kan. Oct. 24, 2007)). The exhaustion "'requirements are jurisdictional and cannot be waived.'" *Est. of Trentadue*, 397 F.3d at 852 (quoting *Bradley v. U.S. ex rel. Veterans Admin.*, 951 F.2d 268, 270 (10th Cir. 1991)). And, because "the FTCA constitutes a waiver of the government's sovereign immunity, the notice requirements established by the FTCA must be strictly construed." *Bradley*, 951 F.2d at 270 (citing *Three-M Enters., Inc.*, 548 F.2d at 295). If the court finds that plaintiff has failed to exhaust a claim administratively, it must dismiss the claim without prejudice for lack of jurisdiction. *Gabriel v. United States*, 683 F. App'x 671, 673–74 (10th Cir. 2017) (explaining § 2675(a)'s exhaustion requirement wasn't intertwined with the merits of plaintiff's FTCA claim so the district court lacked jurisdiction and should've dismissed the unexhausted claims without prejudice, rather than converting to summary judgment motion and dismissing with prejudice).

Here, Ashley Heuton undisputedly exhausted her wrongful death claim administratively. She provided defendant with written notification on a Standard Form 95 (SF-95), identifying herself as an heir and pinpointing a sum certain of $12.5 million. Doc. 48-14 at 1 (Def. Ex. M). Also, Ashley Heuton's SF-95 identified Jamie Heuton as a witness—but not as a claimant. *Id.* Indeed, Ashley Heuton's SF-95 identified no other claimants. *Id.* And none of the other wrongful-death plaintiffs filed SF-95s.[4] Because no other plaintiff filed an SF-95, defendant contends, the FTCA doesn't waive sovereign immunity for the other plaintiffs' wrongful death claims. Doc. 48 at 11. Without such a waiver, defendant argues, the court lacks subject matter jurisdiction over all wrongful death claims except Ashley Heuton's. *Id.*

The Tenth Circuit addressed an analogous situation in *Haceesa v. United States*, 309 F.3d 722 (10th Cir. 2002). There, a mother and daughter filed two administrative claims following the death of their husband/father. *Id.* at 733. They alleged medical malpractice by a hospital owned and operated by the Indian Health Service—an agency of the United States Department of Health and Human Services. *Id.* at 724. A few months later, the decedent's estate also filed an administrative claim. *Id.* at 733. The mother and daughter then filed an FTCA action in federal court. Later, they amended their complaint to add the estate and its claims. *Id.* Our Circuit concluded this amendment procedure rendered the estate's claims premature under the timeline established by the FTCA and the relation-back doctrine. *Id.* at 733–34. Then the Circuit raised a question analogous to the one here: could the mother and daughter's administrative claims sub-

---

[4]    Jamie Heuton—one of the other wrongful death plaintiffs and disputedly an heir—filed an SF-95. Doc. 48-11 at 1 (Def. Ex. J). But she filed that SF-95 "as Administrator of the Estate of Andrew Heuton," listing herself as a witness, and asserting the amount of the claim as $12.5 million for "personal injury," not "wrongful death." *Id.* This SF-95 exhausted the estate's survival claim. But it provided no indication that Jamie Heuton intended to assert a wrongful death claim on her own behalf—or even that Jamie Heuton was an heir to Andrew Heuton.

in for the estate's, essentially allowing the estate's claims to piggyback on the mother and daughter's administrative exhaustion and thus become valid?  *Id.* at 734.

Analyzing that piggyback question, the Circuit first clarified that:  "If there are multiple claimants in an FTCA case, each claimant must individually satisfy the jurisdictional prerequisite of filing a proper claim."  *Id.* (quotation cleaned up).  But the Circuit didn't end its analysis with this seemingly straightforward rule.  Instead, it consulted New Mexico tort law, the source for the substantive law in that FTCA case.  *Id.*  And it considered whether—under the New Mexico Wrongful Death Act—the mother and daughter's notice could suffice as notice of the estate's claims.  The Circuit held it could not.  So, the Circuit directed the district court to dismiss the estate's claims on remand.  *Id.* at 735.

The Circuit's approach in *Haceesa* is instructive here.[5]  Defendant largely hangs its argument on the Circuit's straightforward rule there—"each claimant must individually satisfy the jurisdictional prerequisite[.]"  *Id.* at 734 (quotation cleaned up).  Defendant thus contends that each wrongful death plaintiff should've filed an administrative claim.  Doc. 48 at 11.  And they didn't.  So, the FTCA doesn't waive defendant's sovereign immunity—full stop—and the court must dismiss those plaintiffs' claims for lack of subject matter jurisdiction.  *Id.*  Stated

---

[5]    Plaintiffs' brief asks the court to consider out-of-circuit cases for the proposition that Ashley Heuton's administrative claim suffices for all heirs.  *See* Doc. 54 at 18–20 (first citing *King v. United States*, 3 F.4th 996 (8th Cir. 2021); and then citing *Starr v. United States*, 262 F. Supp. 2d 605, 607 (D. Md. 2003)).  The court has reviewed and considered those cases.  But where, as here, a Tenth Circuit case resolves the issue, the court needn't factor out-of-circuit opinions into its analysis.  *See Scheetz v. Ciolli*, No. 22-cv-01616-LTB-GPG, 2022 WL 20724343, at *1 (D. Colo. Sept. 1, 2022) ("Applicant's reliance on precedent from other circuits does not help because '[a] district court must follow the precedent of this circuit, regardless of its views concerning the advantages of the precedent of our sister circuits.'" (quoting *United States v. Spedalieri*, 910 F.2d 707, 709 n.2 (10th Cir. 1990))), *aff'd*, No. 22-1300, 2023 WL 6366049 (10th Cir. Sept. 29, 2023).

differently, defendant argues that only "heirs who have brought themselves into the United States's waiver of sovereign immunity" can assert viable wrongful death claims.  Doc. 59 at 10.

Plaintiffs respond with two notice theories:  (1) that Ashley Heuton's SF-95 sufficed as notice for all heirs (*Haceesa*'s piggyback argument); and (2) that other written notice plaintiffs' counsel provided sufficed as notice for the other heirs.  The court takes up each theory, below, starting with Ashley Heuton's SF-95.  In so doing, the court patterns its analysis on *Haceesa* and consults Kansas tort law.

### 1.    Plaintiffs' theory that Ashley Heuton's SF-95 sufficed as notice of all heirs' wrongful death claims

Plaintiffs first respond with an argument analogous to *Haceesa*'s piggyback question. They suggest that "Ashley Heuton's wrongful death SF-95 seeking a sum certain amount of $12,500,000 must be deemed for the benefit of all heirs."  Doc. 54 at 17.  In other words, plaintiffs contend that Jamie Heuton, A.H., and Andrew Heuton, Jr. can piggyback on Ashley Heuton's SF-95 to demonstrate administrative exhaustion.  Following the Circuit's lead, the court evaluates this piggyback argument—not simply stopping with the straightforward rule about individual filing—by proceeding to consult the Kansas Wrongful Death Act.

Plaintiffs argue that "under Kansas law, a wrongful death claim must be brought for the benefit of all heirs[.]"  *Id.*  And so, "simply because each heir did not file a SF-95" doesn't preclude the non-filing heir "from recovering in wrongful death when the United States had ample notice of a wrongful death claim brought by all heirs."  *Id.*  Plaintiffs argue, in a nutshell, that the Kansas Wrongful Death Act predicts a suit on behalf of all heirs.  Thus, defendant should have known that Ashley Heuton was submitting a claim on behalf of all heirs.  But Kansas's Wrongful Death Act—and how Kansas courts interpret that Act—don't support plaintiffs' piggyback argument.

To be sure, the Kansas Wrongful Death Act provides for filing an action "for the exclusive benefit of all of the heirs[.]"  Kan. Stat. Ann. § 60-1902.  But the Act doesn't require all heirs to join or intervene in a suit to benefit from the action.  *See id.* (providing a wrongful death action "shall be for the exclusive benefit of all of the heirs who has sustained a loss *regardless of whether they all join or intervene*" (emphasis added)).  In short, an heir can receive the recovery of a wrongful death action without participating in the lawsuit.  The Act clarifies that "all heirs known to have sustained a loss shall share in such apportionment *regardless of whether they joined or intervened in the action.*"  *Id.* § 60-1905 (emphasis added); *see also Siruta v. Siruta*, 348 P.3d 549, 556 (Kan. 2015) ("Each of the heirs, including those who did not join in the wrongful death action, may receive an apportionment of the recovery[.]").

So, all heirs receive the "exclusive benefit" of the wrongful death action—but the sharing occurs at the apportionment stage.  The Kansas Court of Appeals recently explained that a Kansas wrongful death action consists of two steps—the lawsuit and then the apportionment of funds.  *White v. Koerner*, 533 P.3d 314, 320 (Kan. Ct. App. 2023).  And it clarified that an heir may "participate in the second step—apportionment of the settlement funds—after the underlying litigation had been resolved" even when the heir hasn't participated in the first.  *Id.* The Kansas Supreme Court likewise has explained that "the statutory provisions regarding apportionment of the ultimate award make clear that the 'exclusive benefit' language pertains to apportionment of damages.  Apportionment must occur *after* the substance of the action has been litigated and damages have been awarded to the named plaintiff(s)."  *Siruta*, 348 P.3d at 556 (emphasis in original).  So, the Act's "exclusive benefit" language provided no basis for defendant to assume that all of Mr. Heuton's heirs would bring a wrongful death claim based on Ashley Heuton's SF-95.  Those other heirs could have chosen to participate just in the second

step, the apportionment phase. Ashley Heuton administratively exhausting a wrongful death

claim as an heir doesn't suffice to fulfill the other heirs' exhaustion requirement. The court thus

rejects plaintiffs' piggyback theory.

Before it moves on to plaintiffs' other theory, the court notes another District of Kansas

case. It reached a similar conclusion—though it was the government, not the plaintiffs, who

endorsed the piggyback argument there. *See Pickard v. United States*, No. 18-cv-2372-JWL,

2019 WL 329570 (D. Kan. Jan. 25, 2019). In *Pickard*, the government argued that one heir's

wrongful death administrative claim had triggered the FTCA clock for other heirs, who later

filed individual administrative claims. *Id.* at *1–2. And so, the government relied on that first-

filed claim to contend that the later arriving claimants had filed their suit out-of-time. *Id.* at *2.

In other words, the government argued that the court should lump all the wrongful death claims

together, piggybacking all heirs onto one claimant's SF-95. The government grounded its

argument in the Kansas Wrongful Death Act, much as plaintiffs do here. It argued: "According

to the government, Kansas law authorizes 'one claim' for wrongful death and that 'single claim'

may be brought by any one of the heirs at law of the deceased." *Id.* District Judge John W.

Lungstrum rejected the government's argument, leaning into *Haceesa*.

Judge Lungstrum concluded that where one individual's "administrative claim

contain[ed] no allegations indicating that any other claimants were seeking wrongful death

damages and [made] no allegations indicating that he was authorized to file a wrongful death

claim on behalf of anyone else, plaintiffs were required to file their own claim form." *Id.* at *3

(footnote omitted). And, Judge Lungstrum clarified, "the FTCA contemplates that each claimant

will file his or her own administrative claim for the same wrongful death cause of action, unless

a single claim provides adequate notice of each claimant's claim." *Id.* at *4. This conclusion

coincides with the explicit instructions on the SF-95 claim form, which recite: "If the incident involves more than one claimant, each claimant should submit a separate claim form." Doc. 48-11 at 2 (Def. Ex. J); Doc. 48-14 at 2 (Def. Ex. M).

Like in *Pickard*, the court here can't attach other heirs' requisite notice onto a single heir's administrative claim where that single heir's claim didn't indicate any other claimants.

### 2. Plaintiffs' theory that other writings sufficed as notice of all heirs' wrongful death claims

Plaintiffs also argue that other written notice—apart from Ashley Heuton's SF-95—informed defendant of additional wrongful-death claimants. Doc. 54 at 19–20. Specifically, plaintiffs identify counsel's email exchange with USACS and USACS's receipt of the Complaint in this action as documents constituting notice. *Id.* Plaintiffs correctly contend that the Tenth Circuit has contemplated that documents other than an SF-95 may serve as notice under the FTCA. *See, e.g.*, *Cizek v. United States*, 953 F.2d 1232, 1234 (10th Cir. 1992) (allowing for possibility that letter from plaintiff's counsel to agency might suffice to satisfy notice requirements if not submitted outside limitations period); *Kendall v. Watkins*, 998 F.2d 848, 852 (10th Cir. 1993) (rejecting letters as adequate presentation of claim to agency because letters didn't include sum certain, but not because they were letters); *D'Addabbo v. United States*, 316 F. App'x 722, 725 (10th Cir. 2008) (contemplating possibility that pro se plaintiff's letter could "establish the exhaustion of administrative remedies"). But the documents plaintiffs identify here—counsel's email and the Complaint—don't suffice. Neither alternative form of written notification possesses the requisite elements of an administrative claim without requiring—again—the additional heirs to piggyback on Ashley Heuton's SF-95.

### a. Emails Between Plaintiffs' Counsel and USACS

Start with the email.  Plaintiffs contend that the Army "was explicitly informed in writing that the wrongful death claim was being brought on behalf of all heirs" when plaintiffs' counsel emailed USACS on September 22, 2023.  Doc. 54 at 9, 19.  And plaintiffs argue that USACS's September 27, 2023, response "acknowledge[ed] the claims for Mr. Heuton's heirs[.]"  *Id.* at 9.  But this characterization doesn't capture the whole of the exchange, presented below.  First, consider the relevant email excerpt from plaintiffs' counsel to USACS:

> Thanks for the e-mail.  I've attached the Letters of Administration you had requested in a prior correspondence.  To be clear, Jamie Heuton is the administrator of the Estate and has filed the SF-95 for the Estate's claim.  Ashley Heuton is a wrongful heir (a daughter of Andrew Heuton) and has filed the SF-95 for the wrongful death claim on behalf of that class of heirs.  You can disregard the SF-95 form for Amy Moorlag (who was Mr. Heuton's sister).
>
> In my experience I have not filed a separate SF-95 for each wrongful death heir given that not every heir has to be a named plaintiff as long as they fall into the statutorily defined class.  Am I incorrect about this?

Doc. 54-6 at 1 (Pl. Ex. P).  Plaintiffs argue that counsel stated the wrongful death claim was "on behalf of that class of heirs"—qualifying as sufficient notice.  But look at USACS's response:

> Hello, it was good speaking to you today.  As discussed, I see claims as being filed by the person filing the claim.  While I understand under KS law there would be a settlement hearing if we got to a point of settlement (again, we have not yet investigated the claim), we still need to wait until the SOL runs in order to ensure we don't get any additional claims.
> Accordingly, the only "heirs" we currently have a claim for are Jamie
> (wife) and Ashley (daughter).  I understand she has siblings who have not filed.  If there are additional heirs for which you intend to file claims, you should be aware that we need to receive them prior to the SOL.

Doc. 54-7 at 1 (Pl. Ex. Q).  USACS's response clarified that it needed to receive any additional heirs' claims before the statute of limitations ran.  *Id.*  USACS never suggested—as plaintiffs contend—that counsel's email would suffice as notice of those other claimants.  Indeed, USACS suggested just the opposite—that any other heir who intended to file a claim needed to file a claim, and timely.  And a later email from USACS to plaintiffs' counsel—confirming the nature of Ashley Heuton's claim—explicitly reiterated which claims it had received.  This later email never mentioned any additional heirs or a class of heirs.

I want to verify that the recently filed SF-95 signed on 9 September 2023 by Ashley Heuton, daughter of the decedent, is for wrongful death. I ask as the SF-95 box 12b for personal injury has $12.5M, but box 12c for wrongful death has no amount. I assume this was just a clerical error but want to be sure. I wouldn't be a proper government employee if I didn't sweat little boxes on forms.

If so, we have an SF-95 for personal injury (surviving claim) from the estate by the administrator (Jamie) and an SF-95 for wrongful death claim by Ashley.

Doc. 48-15 at 2 (Def. Ex. N).

Further negating plaintiffs' argument based on emails, counsel's September 22 email never identified the names of the heirs, or how many of them there were. *See* Doc. 54-6 at 1 (Pl. Ex. P). Nor does the email mention a sum certain—a required element of an administrative claim that can suffice. *See Bradley*, 951 F.2d at 271 (explaining that "claims against the government require diligent presentation" which includes "written notification, *plus a claim in a sum certain*, in order to be considered adequate notice" (emphasis in original)). Plaintiffs brush aside this deficiency, arguing that Ashley Heuton's $12.5 million sum certain represented "the total damages claimed for all heirs[.]" Doc. 54 at 19. But accepting that argument would require the court to piggyback the other heirs' notice onto Ashley Heuton's. And the court already has explained why it can't do so. *See* § II.B.1. So, the court concludes plaintiffs' counsel's email doesn't satisfy the "diligent presentation" required to waive sovereign immunity on behalf of the other heirs. *Bradley*, 951 F.2d at 271.

<h4 style="text-align:center"><b>b.    Receipt of the Complaint</b></h4>

Neither does the Complaint's receipt. Plaintiffs filed the Complaint on February 21, 2024. Doc. 1 (Compl.). The Army received the Complaint on March 8, 2024. *See* Doc. 54-8 at 1, 3 (Pl. Ex. R) (USPS tracking slip and delivery information identifying date of delivery). But the Complaint received on that date didn't include a wrongful death claim against defendant, or

16

state a sum certain for its claim. *See generally* Doc. 1 (Compl.). Instead, the Complaint was amended on April 30, 2024. And only in their Amended Complaint did plaintiffs add the wrongful death claim against defendant. *See* Doc. 15 at 10–11 (Am. Compl. ¶¶ 51–56). And even then, the Amended Complaint retained another inadequacy: it doesn't state a sum certain for its wrongful death claim. *See generally id.* Plus, administrative exhaustion must occur before a complaint is filed. *See D'Addabbo*, 316 F. App'x at 725 ("The Supreme Court has held that the FTCA exhaustion requirement was not satisfied by a *pro se* claimant who exhausted administrative remedies after filing his complaint." (citing *McNeil v. United States*, 508 U.S. 106, 111 (1993))).

In sum, there's simply no form of written notice that identified the additional heirs as claimants—along with the sum certain—to satisfy the FTCA's notice requirement. And absent administrative exhaustion, sovereign immunity applies to the additional heirs' wrongful death claim. Plaintiffs thus haven't shouldered their burden "of proving the facts supporting subject matter jurisdiction by a preponderance of the evidence." 5B *Wright & Miller's Federal Practice & Procedure* § 1350 (4th ed. May 2025 Update). The court thus dismisses the wrongful death claims made by Jamie Heuton, A.H., and Andrew Heuton Jr. It lacks subject matter jurisdiction over those claims.[6]

## III.    Partial Summary Judgment

Defendant also moves for partial summary judgment against plaintiffs' request for noneconomic damages. Doc. 48 at 12. Defendant contends that plaintiffs' sought-after recovery—an estimated $20 million, Doc. 48-2 at 1–2 (Def. Ex. A)—exceeds statutory limits

---

[6]    Given this conclusion, the court needn't reach defendant's other wrongful-death-claim-dismissal argument—that Jamie Heuton didn't qualify as Mr. Heuton's heir because the couple had divorced and weren't common law married when he died. Doc. 48 at 8–10.

imposed by Kansas law, Doc. 48 at 12.  Specifically, defendant asks the court to apply two

Kansas statutory damage caps—one to plaintiffs' wrongful death claim and one to the estate's

survival claim.  The analysis of those arguments starts with the summary judgment legal

standard.

### A.    Summary Judgment Legal Standard

Summary judgment is appropriate where the moving party demonstrates there is "no

genuine dispute" about "any material fact" and that the movant is "entitled to judgment as a

matter of law."  Fed. R. Civ. P. 56(a).  This standard dictates that the court "view the evidence

and make inferences in the light most favorable to the non-movant."  *Nahno-Lopez v. Houser*,

625 F.3d 1279, 1283 (10th Cir. 2010) (citing *Oldenkamp v. United Am. Ins. Co.*, 619 F.3d 1243,

1246 (10th Cir. 2010)).

"An issue of fact is 'genuine' 'if the evidence is such that a reasonable jury could return a

verdict for the non-moving party' on the issue."  *Id.* (quoting *Anderson v. Liberty Lobby, Inc.*,

477 U.S. 242, 248 (1986)).  "An issue of fact is 'material' 'if under the substantive law it is

essential to the proper disposition of the claim' or defense."  *Id.* (quoting *Adler v. Wal-Mart

Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998)).

Federal courts don't view summary judgment as a "disfavored procedural shortcut[.]"

*Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986).  Instead, it represents an important procedure

"designed 'to secure the just, speedy and inexpensive determination of every action.'"  *Id.*

(quoting Fed. R. Civ. P. 1).

### B.    Analysis

Recall that defendant asks the court to apply Kansas statutory damage caps to plaintiffs'

claims at summary judgment.  Start with the relationship between state law damage caps and the

FTCA.

The FTCA explicitly incorporates state law when it provides that the United States is "liable to the claimant in accordance with the law of the place where the act or omission occurred." 28 U.S.C. § 1346(b)(1); *see also Harvey v. United States*, 685 F.3d 939, 950 (10th Cir. 2012) ("[T]he FTCA mandates application of the law of the place to resolve questions of substantive liability." (quotation cleaned up)). "The phrase 'law of the place' refers to the law of the State where the act or omission occurred." *Mecca v. United States*, 389 F. App'x 775, 779 (10th Cir. 2010). And "under the FTCA, the government is to be treated 'in the same manner and to the same extent as a private individual under like circumstances' depending on the law of the state where the tort occurred." *Hill v. United States*, 81 F.3d 118, 120 (10th Cir. 1996) (quoting 28 U.S.C. § 2674). Drawing on the FTCA principles of "law of the place" and "like circumstances," our Circuit has found state statutory damage caps apply to the government in FTCA cases. *See Haceesa*, 309 F.3d at 726 (identifying the FTCA's "like circumstances" language as one reason why "'the United States government may benefit'" from a state's "'specific cap on tort liability'" (quoting *Hill*, 81 F.3d at 121)). So, the government may invoke a Kansas statutory damage cap, if it applies.

Here, defendant argues that the Kansas Wrongful Death Act's damage cap—found in Kan. Stat. Ann. § 60-1903—limits any non-pecuniary wrongful death recovery to $250,000. Doc. 48 at 12. Defendant also argues that the personal injury damage cap—found in Kan. Stat. Ann. § 60-19a02—limits the estate's noneconomic survival claim recovery to $325,000. *Id.* These two statutory damage caps require different analyses because the parties' arguments implicate the validity—or invalidity—of each statute under the Kansas Constitution's Bill of Rights. So, the court addresses each statutory damage cap separately, beginning with the cap for wrongful death actions under Kansas law.

### 1.     Statutory Damage Cap on Wrongful Death Claim

The Kansas Wrongful Death Act provides that in "any wrongful death action, the court or jury may award . . . damages . . . [not to] exceed in the aggregate the sum of $250,000 and costs." Kan. Stat. Ann. § 60-1903(a). And—under Tenth Circuit precedent—the government may benefit from that cap in an FTCA case. *See Haceesa*, 309 F.3d at 726. At first blush, therefore, the analysis seems straightforward. Kansas law limits recovery on wrongful death claims and those limits apply to the government here. So, defendant is entitled to summary judgment limiting any wrongful death recovery to $250,000, as prescribed by § 60-1903.

To avoid this outcome, plaintiffs urge the court to apply the Kansas Supreme Court's reasoning in *Hilburn v. Enerpipe, Ltd.* to the wrongful death damage cap. 442 P.3d 509 (Kan. 2019). If the court applies *Hilburn*'s reasoning, plaintiffs argue, then Kansas's wrongful death damage cap is invalid and doesn't limit their recovery here. Doc. 54 at 26. An overview of *Hilburn* helps frame plaintiffs' argument.

In *Hilburn*, the Kansas Supreme Court facially invalidated a statutory limit on noneconomic losses for personal injury. The invalid statute—Kan. Stat. Ann. § 60-19a02—required the court to reduce any noneconomic loss award exceeding the specified statutory limit in a personal injury action. *Id.* at 514 (quoting § 60-19a02(d)). The cap worked like this: the court didn't instruct the jury on the limitations of the damage cap. Instead, when the verdict resulted in an award for noneconomic loss above a given amount, the court entered judgment in the amount of the statutory maximum—not the verdict's amount. *Id.* (quoting § 60-19a02(d)).[7] Three Kansas Supreme Court justices reasoned that the statutory damage cap "disturb[ed] the

---

[7]     The maximum award for noneconomic loss varied—depending on the year in which the cause of action accrued—from $250,000 to $350,000. Kan. Stat. Ann. § 60-19a02(d)(1)–(4).

jury's finding of fact on the amount of the award" and thus "substitut[ed] the Legislature's nonspecific judgment for the jury's specific judgment." *Id.* at 524. The justices concluded that the damage cap thereby violated the jury trial right protected under section 5 of the Kansas Constitution's Bill of Rights—making the cap "facially unconstitutional[.]" *Id.* Justice Caleb Stegall concurred, concluding that "K.S.A. 60-19a02 does in fact invade the historic province of the jury to decide a contested matter. . . . [and] violates section 5." *Id.* at 524–25. And so, a majority of Kansas's highest court struck down the personal injury statutory damage cap as facially invalid. [8]

Plaintiffs here suggest the court should apply *Hilburn*'s reasoning to invalidate Kansas's wrongful death damage cap. That's tricky. Here's why. Kansas courts have concluded (repeatedly) that wrongful death claims are creatures of statute—not common law. *See Higginbotham v. State*, 551 P.3d 806, 2024 WL 3466849, at *4 (Kan. Ct. App. 2024) ("When the Kansas Constitution came into existence, there was no common-law right to recover for wrongful death."); *Tillman v. Goodpasture*, 485 P.3d 656, 666 (Kan. 2021) ("'Kansas common law did not recognize a civil claim for wrongful death at the time our Bill of Rights was adopted.'" (quoting *Leiker ex rel. Leiker v. Gafford*, 778 P.2d 823, 848 (Kan. 1989)); *Jeanes v. Bank of Am., N.A.*, 295 P.3d 1045, 1048 (Kan. 2013) ("[G]enerally, under common law, tort claims did not survive either the death of the tortfeasor or the plaintiff. A Kansas statute now

---

[8]     The parties spill much ink about whether *Hilburn*, a 3-1-2 decision, "was decided by a fractured court" and how that fracture implicates applying it here. Doc. 48 at 12; Doc. 54 at 24; Doc. 59 at 12–13. But Justice Stegall, in his concurring opinion, clarified that *Hilburn* "is a true majority . . . for those portions [he] joined[.]" 442 P.3d at 525 (Stegall, J., concurring). And he expressly joined in invalidating the statutory damage cap as violative of section 5 of the Kansas Constitution's Bill of Rights. *See id.* at 524–25 ("Finally, I conclude that though it is a close call, K.S.A. 60-19a02 does in fact invade the historic province of the jury to decide a contested matter. As such, I concur in the judgment we reach that K.S.A. 60-19a02 violates section 5."). So, the operative part of *Hilburn* here—the part evaluating the wrongful death statutory cap—represents a majority opinion. And thus it stands as Kansas law.

controls whether a cause of action survives one's death." (citations omitted)). And, as defendant explains, wrongful death status as a creature of statute matters when applying *Hilburn*. Doc. 48 at 14–15. Recall that *Hilburn* facially invalidated the personal injury damages limit because it violated section 5 of the Kansas Constitution's Bill of Rights—the jury trial right. But section 5 only preserves a jury trial right that "historically existed at common law when [Kansas's] constitution came into existence." *Hilburn*, 442 P.3d at 514 (quotation cleaned up). That is, section 5 protects "the right to a jury trial in those causes of action that were triable to a jury under the common law extant in 1859, when the Kansas Constitution was ratified by the people of our state." *Id.* (quotation cleaned up). So, where a claim didn't exist in the common law of 1859, section 5 doesn't apply. And that common law requirement presents a problem when plaintiffs ask the court to borrow *Hilburn*'s reasoning—premised on that section 5 right—and extend it to a statutory creature like a wrongful death claim.

Indeed, Kansas courts interpreting *Hilburn* have refused to apply the case's reasoning to other statutory damage caps where the implicated claims are creatures of statute. Take *Higginbotham v. State*, for instance. In *Higginbotham*, plaintiff sought to recover under the Kansas Workers Compensation Act after his wife died in a traffic accident while traveling for work. 2024 WL 3466849, at *1. He was awarded a lump sum and weekly death benefit, ending when the benefits reached the statutory cap provided under the workers compensation statute, Kan. Stat. Ann.§ 44-501b(h). *Id.* Plaintiff appealed, arguing—in part—that the statutory cap and exclusive remedy provisions are unconstitutional under section 5 of the Kansas Constitution's Bill of Rights. *Id.* The Kansas Court of Appeals acknowledged that employees had a common-law right to sue employers for injuries when the Kansas Constitution came into existence. *Id.* at *3. It would seem, then, that the statutory cap implicates section 5's jury trial

right, just as it did in *Hilburn*.  But not so fast, the Kansas Court of Appeals cautioned.

*Higginbotham*'s plaintiff didn't bring a cause of action for his wife's injuries.  *Id.* at *4.  Instead,

he sought compensation for his wife's death.  And when "the Kansas Constitution came into

existence, there was no common-law right to recover for wrongful death."  *Id.*  So,

*Higginbotham* concluded, the statutory cap and exclusive remedy provision didn't violate section

5's jury trial right because plaintiff had asserted a wrongful death claim, not a claim for injuries.

*Id.*  Succinctly, *Hilburn*'s reasoning doesn't apply to wrongful death actions as statutory

creatures.  *See also Ashley Clinic, LLC v. Coates*, 545 P.3d 1020, 1036–37 (Kan. Ct. App. 2024)

(concluding under similar reasoning that Kansas Tort Claims Act statutory damage cap doesn't

violate section 5's jury trial right because plaintiff would have had no common-law right to sue a

government entity when Kansas ratified section 5).

      The same conclusion follows in due course here.  Kansas courts have held—

unequivocally and recently—that no plaintiff would have had a common-law right to bring a

wrongful death claim when section 5 was ratified.  *See Higginbotham*, 2024 WL 3466849, at *4;

*Tillman*, 485 P.3d at 666; *Jeanes*, 295 P.3d at 1048.  The court thus predicts the Kansas Supreme

Court would reject plaintiffs' argument.  Instead—the court predicts—the Kansas Supreme Court

would find that *Hilburn*'s reasoning doesn't implicate the wrongful death damage cap because

wrongful death claims are statutory in origin, not a product of the common law—much as the

Kansas Court of Appeals decided in *Higginbotham*.  *See Wade v. EMCASCO Ins.*, 483 F.3d 657,

666 (10th Cir. 2007) (explaining that, "where no controlling state decision exists, the federal

court must attempt to predict what the state's highest court would do" and that, "in doing so, it

may seek guidance from decisions rendered by lower courts in the relevant state" (quotation

cleaned up)).

Plaintiffs offer one final argument to suggest Kansas courts would conclude otherwise. They purport to compile an unparalleled history of wrongful death actions in Kansas to demonstrate wrongful death's common-law roots. Doc. 54 at 26, 28–29. And, they argue, their "comprehensive historical analysis" shows that Kansas courts have gotten it wrong since 1877. *Id.* at 28–29 (acknowledging that "it has been generally assumed that Kansas did not recognize wrongful death actions as common law" since *McCarthy v. Chicago, Rock Island & Pac. R.R. Co.*, 18 Kan. 46 (1877)); *see also McCarthy*, 18 Kan. at 52 (quoting Kansas code section 420 to clarify that claim that survives person's death isn't included in but is "[i]n addition to the causes of action which survive at common law"). Nonetheless, plaintiffs contend, Kansas courts would do an about face in light of their comprehensive historical analysis. The court isn't convinced. Almost 150 years after *McCarthy*'s holding in 1877, the Kansas Court of Appeals reached the same wrongful-death-as-statutory-creature conclusion. And plaintiffs—to their credit— acknowledge this much. *See* Doc. 54 at 26 ("As recently as [2024], Kansas courts have reaffirmed that claims for wrongful death are statutory in nature." (citing *Higginbotham*, 2024 WL 3466849)). Nonetheless plaintiffs bet the Kansas courts would change their minds. This court declines that bet. Instead, it predicts Kansas courts would continue to view wrongful death actions as creatures of statute. So, section 5's jury trial right wouldn't attach and *Hilburn*'s reasoning wouldn't transfer to the wrongful death damage cap.

Untouched by section 5, Kan. Stat. Ann. § 60-1903 caps non-pecuniary recovery to $250,000 for wrongful death claims. The court thus grants defendant summary judgment and limits any non-pecuniary wrongful death recovery under the statutory limits imposed by Kan. Stat. Ann. § 60-1903.

### 2. Statutory Damage Cap on the Estate's Survival Claim

Defendant likewise moves for summary judgment to limit the damages of the estate's survival claim. But unlike wrongful death claims, Kansas law doesn't provide a separate statutory damage cap for survival actions. Instead, defendant invokes the personal injury statutory damage cap that *Hilburn* held unconstitutional under section 5. Doc. 48 at 12. Highly simplified, defendant asks the court to impose that facially invalidated damage cap because, it argues, the court's reasoning in *Hilburn* doesn't apply in these circumstances. Defendant identifies two ways these circumstances diverge from those in *Hilburn*. *One*, defendant argues that the estate's survival action is statutorily created—unlike the negligence action at issue in *Hilburn*—and therefore doesn't implicate the jury trial right under section 5. *Id.* at 14–15. *Two*, it contends the FTCA's mandated bench trial likewise alleviates *Hilburn*'s concern about a damage cap invading the historic province of the jury. *Id.* at 15–16. In essence, defendant invites the court to predict that Kansas courts would revisit a facially invalidated statute and resurrect it to apply in the unique circumstances presented here. The court declines this invitation, for a couple of reasons.

*First*, defendant never provides any authority suggesting this court selectively could apply a statutory provision already declared unconstitutional by a state supreme court. *See generally* Doc. 48. To be sure, Kansas courts since *Hilburn* have decided that statutory damage caps remain constitutional where they don't implicate section 5's jury trial right. *See Higginbotham*, 2024 WL 3466849, at *4 (refusing to apply *Hilburn*'s reasoning to invalidate statutory cap and exclusive remedy provision because wrongful death claim didn't implicate jury trial right under section 5); *Ashley Clinic*, 545 P.3d at 1036–37 (refusing to apply *Hilburn*'s reasoning to invalidate KTCA damage cap because suing government entities didn't implicate jury trial right under section 5). The court already has addressed those cases. *See* § III.B.1. And

25

defendant contends those cases should determine the result here. Doc. 48 at 15. But upholding the constitutionality of a separate damage cap—as those cases did ever since *Hilburn*—differs meaningfully from resurrecting an already-invalidated cap. The court predicts Kansas courts would do the former—indeed, they already have. But the court declines to predict Kansas courts would do the latter.

*Second*, defendant's request defies the very definition of facial invalidation. The Kansas Supreme Court has defined facial unconstitutionality as "unconstitutional in all circumstances[.]" *State v. Ryce*, 368 P.3d 342, 348 (Kan. 2016), *adhered to on reh'g*, 396 P.3d 711 (Kan. 2017). Defendant's request to cap plaintiffs' survival action damages under Kan. Stat. Ann. § 60-19a02 requires the court to apply a statute the Kansas Supreme Court has deemed "facially unconstitutional[.]" *Hilburn*, 442 P.3d at 524. That won't work. The Kansas Supreme Court, in effect, decided § 60-19a02 was "unconstitutional in all circumstances[,]" *Ryce*, 368 P.3d at 348, not just the circumstances before it in *Hilburn*, 442 P.3d at 524. And so, the court predicts Kansas courts wouldn't resurrect the invalidated statute to consider it under another set of circumstances. The court thus denies summary judgment to defendant on its motion to cap plaintiffs' survival action damages under Kan. Stat. Ann. § 60-19a02.

## IV.    Conclusion

The court concludes that plaintiffs Jaime Heuton, A.H., and Andrew Heuton, Jr. didn't exhaust their wrongful death claims administratively. And so, they haven't secured waiver of the United States's sovereign immunity under the FTCA. The court thus dismisses Jamie Heuton, A.H., and Andrew Heuton, Jr.'s wrongful death claims without prejudice for lack of subject

matter jurisdiction.[9]  Ashley Heuton's wrongful death claim persists.  Separately, the court concludes that Kan. Stat. Ann. § 60-1903 applies to limit any non-pecuniary recovery for wrongful death.  But the Kansas Supreme Court has found Kan. Stat. Ann. § 60-19a02 facially unconstitutional and, therefore, it can't apply to limit the estate's survival claim here.

**IT IS THEREFORE ORDERED BY THE COURT THAT** defendant United States's Motion for Partial Dismissal and/or Summary Judgment (Doc. 48) is granted in part and denied in part, all as expressed in this Order.

**IT IS FURTHER ORDERED THAT** plaintiffs' Motion to Dismiss Certain Defendants Without Prejudice (Doc. 44) is denied as moot in light of the Stipulation of Dismissal (Doc. 80) dismissing the same under Fed. R. Civ. P. 41(a)(1)(A)(ii).

**IT IS SO ORDERED.**

**Dated this 24th day of September, 2025, at Kansas City, Kansas.**

**s/ Daniel D. Crabtree**
**Daniel D. Crabtree**
**United States District Judge**

---

[9]    "A longstanding line of cases from this circuit holds that where the district court dismisses an action for lack of jurisdiction, . . . the dismissal must be without prejudice."  *Brereton v. Bountiful City Corp.*, 434 F.3d 1213, 1216 (10th Cir. 2006).